# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVEN D. GABRIEL, JR., #357-055 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-09-3099 |
| SGT. D. PURCELL | * | |
| Defendant | * | |

***

## MEMORANDUM

Pending is Defendant's Motion to Dismiss or for Summary Judgment. ECF No. 17. Plaintiff opposes the motion. ECF No. 19. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010).

## Background

Plaintiff, who was confined at Maryland Correctional Adjustment Center (MCAC)[1], alleges he was assaulted by Sergeant Purcell on September 21, 2009. Plaintiff states he was receiving food loaf for meals and his lunch was being delivered at 4:00 p.m. He claims he was upset about being fed lunch so late and refused to close the slot in his cell door, holding it open with his right hand. Purcell forced the hot food loaf into the slot, smashing it all over Plaintiff's hands and arms. Plaintiff then states he told Purcell, "fuck you, I'm still not closing my slot bitch." In response, Purcell stabbed Plaintiff in the hand multiple times with an ink pen. Plaintiff states the head of the pen had to be "medically removed." He seeks $50,000 in damages. ECF No. 1.

Defendant alleges he was distributing food in Plaintiff's housing unit and when he opened the front of the food slot on Plaintiff's cell, Plaintiff stuck his hand through the slot to hold it open. Purcell advised another officer to leave the tier and notify a supervisor of

---

[1] Plaintiff has been released from prison. ECF No. 19 at p. 3.

Plaintiff's conduct. Plaintiff grabbed Purcell's left hand and pulled him against the food slot. Purcell gave Plaintiff several direct orders to release him; however, Plaintiff failed to comply. Plaintiff continued to pull Purcell's hand through the slot, using one hand, and began throwing the hot loaf meal on Purcell using the other hand. During the struggle Purcell attempted to grab his pepper spray or radio, but was unable to reach either. Purcell then struck Plaintiff several times with an ink pen until Plaintiff released his hand. ECF No. 17 at Ex. 1.

Plaintiff was escorted to the medical department by Lieutenant Coby, where Nurse Basir provided medical treatment for five small puncture wounds to his hand.[2] Plaintiff's right arm was washed with soap and water, triple antibiotic ointment was applied to the wounds, and the wounds were dressed with band-aids. No follow-up treatment was required aside from providing additional band-aids and ointment. Plaintiff was charged with violating institutional rules 100, 101, and 400[3] for the incident. On October 2, 2009, he pled guilty and received 150 days of segregation. ECF No. 17 at Ex. 1 and 2.

In correspondence dated March 10, 2010, Plaintiff alleges he has been harassed and assaulted by the same officer on multiple occasions. ECF No. 15. He claims he filed ARPs regarding the harassment but they were dismissed and nothing was done; he does not specify what conduct constituted harassment. The Court issued an order requiring Defendant to respond to the allegation. ECF No. 16.

In response Defendant states Plaintiff, in an ARP dated February 8, 2010, claimed that on February 3, 2010, he notified an unidentified officer that he had not received his medication.

---

[2] The medical report notes that a visual examination of Mr. Gabriel's hand revealed "five scanty puncture wounds, four on the outer aspect of wrist and one on the distal end of the wrist. Small rounded metal tip from one wrist puncture Good R[ange] O[f] M[otion] in fingers and wrist. Minimal bleeding from wounds." ECF No. 17 at Ex. 1, p. 7.

[3] Rule 100 prohibits involvement in any disruptive behavior; Rule 101 prohibits assault or battery on staff; and Rule 400 prohibits disobeying a direct order. *See* DCD 105-4, Appendix p. 2.

ECF No. 17 at Ex.1, pp. 20-21. Plaintiff claimed the officer left the tier and sent Purcell to speak with him. Plaintiff states that his food slot was opened and he was stooped over to speak through the slot to Purcell. He claims Purcell spat in his face and left the tier. Purcell states in a Matter of Record that he does not recall speaking with Plaintiff on February 3, 2010, and denies ever spitting on Plaintiff. *Id*. at p. 24. Sergeant Baah stated in response to the ARP investigation that he was passing through the area conducting his rounds as duty sergeant and observed that the food slot on Plaintiff's cell was open. *Id.* at p. 25. Baah reported the open slot to Purcell and was advised that Plaintiff had been holding the slot open. *Id*. When Baah went to Plaintiff's cell door he found Plaintiff asleep and closed the food slot. *Id*. The ARP investigation conducted by Major Locklear included his review of video surveillance. On the video Plaintiff is seen holding his food slot open and Purcell is seen at the cell speaking to Plaintiff, but is not seen spitting at or on him.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### Exhaustion of Administrative Remedies

Defendant argues that this Court cannot consider Plaintiff's allegations because he has failed to avail himself of administrative remedies. The Prisoner Litigation Reform Act (PLRA) provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional

conditions and suits alleging unconstitutional conduct). Exhaustion is required even if the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir.2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, Plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendant has forfeited his right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D.Md.2003). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D.Md.1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's

grievance process); *Booth v. Churner*, 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir.2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Defendant states Plaintiff failed to properly pursue administrative remedies because he attempted to file a complaint with the Inmate Grievance Office (IGO) without first exhausting the institutional administrative remedy procedure. ECF No. 17 at Ex. 3. This statement is not supported by the record. Plaintiff attached to his Complaint a copy of the ARP form he submitted to the warden shortly after the assault. ECF No. 1 at Ex. 1. A receipt indicates it was received by institutional personnel on October 2, 2009. *Id*. at p. 3. Additionally, Plaintiff states that the inmate handbook provided to him states "the ARP process is ended after the appeal to the Commissioner is closed." ECF No. 19 at pp. 2 and 6. Plaintiff claims he pursued the ARP through the Commissioner's office and was, therefore, under the impression he was not required to further pursue an administrative remedy through the IGO. *Id*. In light of the rebuttal provided by Plaintiff, the Court concludes that the exhaustion requirement has been met.

**Analysis**

Excessive Force Claim

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm". *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must

6

look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

Defendant maintained during institutional investigations of the incident[4] that his conduct was in self-defense as he was being physically assaulted by Plaintiff and could not reach his pepper spray or his radio. ECF No. 17 at Ex. 1, p. 17. He states his radio and pepper spray were on the left side of his body and Plaintiff had grabbed his left hand. He also claims the reaction to stab Plaintiff with the pen was a spontaneous act on his part because Plaintiff was bending his fingers in such a way he feared he would break them. *Id*. He describes the pain inflicted by Plaintiff as excruciating.

Plaintiff states that Purcell's account lacks credibility because he wears his pepper spray and radio on his right side. ECF No. 19. Plaintiff further states that prison policy prohibits an officer being in the housing unit alone; therefore, Purcell would not have ordered the other officer off the tier to get help. Plaintiff further states Purcell had a working radio which he could have used to call for help instead of sending the other officer for help. Plaintiff does not deny, however, that he refused to let go of Purcell's hand, or that he was attempting to harm Purcell by pulling his hand through the slot.

---

[4] Purcell has not submitted an affidavit or statement under oath in support of the Motion for Summary Judgment.

7

Counsel for Defendant states Plaintiff posed an immediate threat to Defendant's personal safety because he physically had hold of his left hand and had pulled it through the food slot. Exhibit 2 of MTDSJ, at 17. The Use of Force Manual permits correctional personnel to use force to control or stop non-compliant behavior to protect self or others. ECF No. 26 at Ex. 1, p. 9.

Where a situation requires force an employee shall:

(a) Use only the minimum amount of force reasonably necessary to control or stop the non-complaint behavior;

(b) Use force consistent with Department policy, procedure and approved training related to the use of force; and

(c) Reasonably de-escalate the use of force as the non-compliant behavior decreases or stops

ECF No. 26 at Ex. 1, at 9.

Defendant further states that the manual permits correctional personnel to use the appropriate level of force, without approval, "where any delay in a response to noncompliant behavior would result in personal harm, substantial property damage or a breach of correctional facility security." *Id*. at 15. It is undisputed that Plaintiff refused several direct orders from Defendant to cease his assault, prompting Defendant to use the force necessary to free his hand from Plaintiff's grasp. In the aftermath of the incident Plaintiff ironically seeks the shelter of regulations governing the conduct of correctional officers when it was Plaintiff who created the urgent circumstances requiring Defendant to resort to the means available to restore discipline. The situation was not one where a calm, calculated response was available to Defendant. The force used, although unorthodox, was justified by the circumstances.

Retaliation Claim

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that

the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim); *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Taking Plaintiff's allegations as true, the conduct described, spitting in Plaintiff's face on one occasion, does not constitute the sort of adversity that would discourage a reasonable person from availing themselves of the constitutional guarantee of access to courts. Although Plaintiff protests that Defendant should not have been assigned to an area of the prison where he was housed because of the September incident, his subjective view is conclusory and is not evidence of retaliatory conduct. Plaintiff has failed to allege sufficient facts to go forward with a claim of retaliation.

**Conclusion**

The Court concludes that the force used against Plaintiff was not excessive under the undisputed circumstances and there is insufficient evidence to establish a retaliation claim. Thus, Defendant's Motion to Dismiss or for Summary Judgment, construed as a Motion for Summary Judgment shall be granted in a separate Order which follows.

November 17, 2010

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE